**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**MARCY ELLIS AND GREG ELLIS** **CIVIL ACTION**

**VERSUS**

**NO. 25-815-BAJ-EWD**

**ALBERTSONS COMPANIES INC., ET AL.**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 8, 2026.

Erin Wilder-Doomes

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**MARCY ELLIS AND GREG ELLIS** **CIVIL ACTION**

**VERSUS**

**NO. 25-815-BAJ-EWD**

**ALBERTSONS COMPANIES INC., ET AL.**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Motion to Remand (the "Motion"), filed by Marcy Ellis ("Marcy") and Greg ("Greg") Ellis (collectively, "Plaintiffs"), which contends that this Court lacks subject matter jurisdiction because nondiverse defendant, Julio Ojeda-Dartagna ("Ojeda-Dartagna"), was properly joined and because the defendants did not adequately establish the requisite amount in controversy ("AIC").[1] Defendant Albertsons Companies, Inc. ("Albertsons") opposes the Motion.[2] The matter is fully briefed and oral argument is not necessary.

Because Albertsons has adequately established AIC and has shown that nondiverse defendant, Ojeda-Dartagna, was improperly joined, it is recommended[3] that the Motion be denied and that Plaintiffs' claims against Ojeda-Dartagna be dismissed without prejudice. If the recommendations are adopted, the matter should be referred to the magistrate judge for a scheduling conference.

---

[1] R. Doc. 8.

[2] R. Doc. 9. Plaintiffs did not file a reply memorandum.

[3] *See, e.g.*, *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) ("[A] motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review.").

## I. Background

This is a civil action for damages arising out of an alleged slip-and-fall accident occurring in the parking lot of an Albertsons store.[4] On November 19, 2024, Plaintiffs filed their Petition for Damages ("Petition") against Ojeda-Dartagna and Albertsons in state court.[5] The Petition alleges that Marcy fell after encountering an uneven surface in the Albertsons parking lot near her vehicle.[6] The Petition further alleges that Ojeda-Dartagna is liable because he, as the on-duty manager of Albertsons, "had a duty and was in a position to find hazards on the premises, and was in charge of inspecting and maintaining the parking lot and walking surfaces in question, and keeping said parking lot and walking surfaces free from hazards and unreasonable risks of harm such as that encountered by Marcy Ellis on July 10, 2025."[7]

On September 10, 2025, Albertsons and Ojeda-Dartagna (together, "Defendants") removed the case to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332.[8] According to the Notice of Removal, AIC is met based on Plaintiffs' pre-removal discovery responses in which they denied that damages do not exceed $75,000 exclusive of interest and costs.[9] The Notice of Removal further alleges that Plaintiffs are citizens of Louisiana,[10] of diverse citizenship from Albertsons, which is a Delaware corporation with its principal place of business in Idaho.[11]

---

[4] R. Doc. 1-4, p. 4, ¶ 2.

[5] R. Doc. 1-4, p. 4.

[6] R. Doc. 1-4, p. 4, ¶ 2. In connection with these claims, Marcy seeks damages related to injuries sustained in the incident, including pain and suffering, mental anguish and distress, loss of enjoyment of life, past and future medical expenses, and loss of past and future earning capacity. R. Doc. 1-4, pp. 5-6, ¶ 7. Further, Greg, Marcy's spouse, asserts a claim for loss of consortium damages because of the injuries to his wife. R. Doc. 1-4, p. 6, ¶ 8.

[7] R. Doc. 1-4, pp. 5-6, ¶¶ 7-8.

[8] R. Doc. 1, ¶ 7.

[9] R. Doc. 1-5.

[10] R. Doc. 1, ¶ 9, citing R. Doc. 1-4, p. 4, introductory paragraph.

[11] R. Doc. 1, ¶¶ 3, 10.

However, Ojeda-Dartagna, like Plaintiffs, is alleged to be a Louisiana citizen.[12] In other words, if Ojeda-Dartagna remains in this case, this Court cannot exercise subject matter jurisdiction.[13]

Because of the lack of subject matter jurisdiction on the face of the Notice of Removal and Petition, the Court required Plaintiffs to either file an amended complaint, deleting all claims against Ojeda-Dartagna, if they agreed that his joinder in the suit was improper, or to seek remand if they believed that Ojeda-Dartagna was properly joined.[14] In response, Plaintiffs filed the Motion, which seeks remand based on lack of diversity and failure to establish AIC.[15] Albertsons opposes the Motion.[16]

## II. Law and Analysis

### A. Legal Standards

*Improper Joinder and Remand*

The removing party has the burden of proving federal diversity jurisdiction.[17] Remand is proper if at any time the court lacks subject matter jurisdiction.[18] The removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[19]

The improper joinder doctrine is a narrow exception to the rule of complete diversity.[20] If a nondiverse defendant is improperly joined, a district court can disregard the citizenship of that

---

[12] R. Doc. 1, ¶ 11, citing R. Doc. 1-4, p. 4, ¶ 1(B).

[13] No party alleges another basis for federal jurisdiction, and none is apparent.

[14] R. Doc. 6.

[15] R. Doc. 8.

[16] R. Doc. 9.

[17] *Garcia v. Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).

[18] *See* 28 U.S.C. § 1447(c).

[19] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

[20] *McDonal v. Abbott Laboratories,* 408 F.3d 177, 183 (5th Cir. 2005).

defendant for the purposes of evaluating its jurisdiction.[21] "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."[22] In *Smallwood*, the seminal decision of the Fifth Circuit on this issue, the Court "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"[23] Here, there has been no allegation of fraud in the pleading of jurisdictional facts. Rather, Albertsons specifically argues improper joinder under the second method, *i.e.*, that Plaintiff is unable to establish a cause of action against Ojeda-Dartagna.[24] Therefore, the question is whether Albertsons has shown "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[25] A court may resolve the issue of whether a plaintiff has a reasonable basis of recovery under state law in one of two ways. "The court may conduct a Rule 12(b)(6) analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[26] "That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary

[21] *Williams v. Homeland Ins. Co. of New York,* 18 F.4th 806, 812 (5th Cir. 2021), citing *Flagg v. Stryker Corp.,* 819 F.3d 132, 137 (5th Cir. 2016).

[22] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (*en banc*).

[23] *Smallwood,* 385 F.3d at 573, quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003).

[24] R. Doc. 1, ¶¶ 14-21; R. Doc. 9, pp. 2-6.

[25] *Smallwood,* 385 F.3d at 573. *See also Williams,* 18 F.4th at 812 ("We typically evaluate this question by evaluating whether the plaintiff had any possibility of recovery against the non-diverse defendant in state court at the time of removal.") (citations omitted).

[26] *Smallwood*, 385 F.3d at 573.

inquiry."[27] If the plaintiff cannot survive the Rule 12(b)(6) challenge, the claims against the improperly joined defendant should be dismissed without prejudice.[28]

**B. Albertson Has Provided Sufficient Evidence of AIC**

Regarding AIC, Plaintiffs argue that "Defendants' over simplistic argument that plaintiffs' admission that the amount in controversy exceeds $75,000.00 exclusive of interests and costs, fails to meet their burden of proof to establish that diversity jurisdiction exists."[29] Plaintiffs provide no further support that AIC is not met and fail to discuss this topic in their memorandum in support of the Motion. However, the removing party has the burden of proving federal diversity jurisdiction,[30] and the Court has an independent duty to ensure its own subject matter jurisdiction, regardless of whether the opposing party challenges it.[31]

Consistent with state law, Plaintiff's Petition fails to specify an AIC.[32] In such instances, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000 [exclusive of interest and costs]."[33] "[T]he key to the door is an affirmative showing" that the amount in controversy is satisfied "at the time removal is

---

[27] *Id.*

[28] *Flagg*, 819 F.3d at 136 ("In most cases, to determine whether the plaintiff has any possibility of recovery against the non-diverse defendant, the court should 'conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder.'") (citations omitted).

[29] R. Doc. 8, p. 2.

[30] *Garcia,* 351 F.3d at 638; *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[31] *Richard v. USAA Casualty Insurance Company*, No. 17-175, 2017 WL 8944429, at *1 (M.D. La. Nov. 30, 2017) (Jackson, J.), citing *Gonzales v. Thaler*, 565 U.S. 134, 141 (2012).

[32] R. Doc. 1-4, pp. 4-7. *See* La. Code Civ. Proc. 893(A)(1), which states: "No specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand. The prayer for relief shall be for such damages as are reasonable in the premises except that if a specific amount of damages is necessary to establish the jurisdiction of the court, the right to a jury trial, the lack of jurisdiction of federal courts due to insufficiency of damages, or for other purposes, a general allegation that the claim exceeds or is less than the requisite amount is required. By interrogatory, an opposing party may seek specification of the amount sought as damages, and the response may thereafter be supplemented as appropriate."

[33] *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999).

attempted."[34] The removing defendant carries its burden "either by establishing that it is 'facially apparent' that the claims probably exceed $75,000 or by establishing the facts in controversy in the removal petition or an accompanying affidavit to show that the amount-in-controversy is met."[35]

Neither the allegations that Marcy has suffered "severe and permanent injuries, including but not limited to, injuries to her head, face, front teeth, left wrist, and left hand" and general categories of damages, nor Greg's general categories of damages are sufficient to satisfy AIC,[36] which Defendants seem to recognize as they do not rely on these allegations in the Notice of Removal.[37] However, Defendants' only evidence in support of AIC in the Notice of Removal was Marcy's answer to two requests for admission.[38]

<u>**Request for Admission No. 1:**</u>

Please admit or deny that your damages do not exceed $75,000.00, exclusive of interest and costs.

<u>**Response to Request No. 1:**</u>

Denied.

<u>**Request for Admission No. 2:**</u>

Please admit or deny that you will not seek to recover more than $75,000.00 in total damages, exclusive of interest and costs, through judgment or settlement in this matter.

[34] *Gaitor v. Peninsular & Occidental S. S. Co.*, 287 F.2d 252, 255 (5th Cir. 1961).

[35] *Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 773-74 (5th Cir. 2003).

[36] "Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of the damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test." *Davis v. JK & T Wings, Inc.*, No. 11-501, 2012 WL 278728, at *3 (M.D. La. Jan. 6, 2012) and cited cases.

[37] R. Doc. 1-4, pp. 5-6, ¶¶ 7-8.

[38] *See* R. Doc. 1, ¶ 25, citing R. Doc. 1-5.

**Response to Request No. 2:**

Denied.[39]

In *Leger v. Hudson Insurance Company*, this division of the Court found that the following evidence in combination was insufficient to establish the jurisdictional minimum: "(i) Plaintiff's response to a request for admission, where Plaintiff 'Denied' that her 'damages do not exceed $75,000.00 and that you do not waive entitlement to recover any amount in excess of $75,000.00, inclusive of all costs, interest, and attorneys' fees, in this case'; (ii) correspondence with Plaintiff's counsel indicating that Plaintiff 'has undergone ablations and has a recommendation from Dr. Lon Baronne for a lumbar fusion'; and (iii) '[q]uantum research' indicating that 'damages and treatment involving radiofrequency ablations and a recommended lumbar fusion place the amount in controversy in excess of $75,000.'"[40] Though *Leger* notes that there is a split of authority on whether responses to requests for admission can satisfy the amount in controversy requirement, that case held that the evidence presented fell short of an "affirmative showing" that AIC is met.[41] *Leger* noted part of the issue with the request for admission in that case was that it was "compound

[39] R. Doc. 1-5.

[40] *Leger v. Hudson Ins. Co.*, No. 21-00248, 2021 WL 3662071, at **2-3 (M.D. La. Aug. 18, 2021) (Jackson, J.).

[41] *Id.* at n.3; *but see Grimes v. Haar*, No. 13-617, 2015 WL 2239766, at *3 (M.D. La. May 12, 2015) ("Based on the factual allegations of multiple injuries and damages in the Petition, the Plaintiff's failure to plead that her damages did not exceed the jurisdictional amount as permitted by Louisiana procedure and the fact that the Plaintiff expressly 'Denied' in discovery that the amount in controversy was less than the jurisdictional threshold amount of $75,000, exclusive of interest and costs, the Court finds that, at the time of removal, the jurisdictionally required amount was established by a preponderance."). *See also Thomas v. Burlington Coat Factory, Warehouse Corp.*, No. 25-581, 2026 WL 479968, at *3 (M.D. La. Feb. 4, 2026), report and recommendation adopted, No. 25-581, 2026 WL 477093 (M.D. La. Feb. 19, 2026) (Jackson, J.) (stating that "[t]his Court has considered a response to a request for admission to constitute summary judgment type evidence for determining the jurisdictional amount, but has not held that a response, without more, was sufficient for satisfying a removing defendant's burden of demonstrating that the jurisdictional amount is satisfied."), citing *Pylant v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 17-189, 2017 WL 3446536, at *5 (M.D. La. June 29, 2017), report and recommendation approved, 2017 WL 3446029 (M.D. La. Aug. 10, 2017) (Jackson, J.) (additional citation omitted); *Cabrera v. Toys R Us - Delaware*, No. 12-1319, 2012 WL 2935685, at *2 (E.D. La. July 17, 2012) ("Accepting plaintiffs' admissions that they intend to seek more than the jurisdictional minimum (or, as in the cases above, deny that they don't intend to seek less than the jurisdictional minimum) would offer parties a tool to consent to subject matter jurisdiction, which is not permitted.").

and written in the negative."[42] While the requests for admissions were not compound in this case, Defendants also did not provide any other corroborating evidence as there was in *Leger*.

Because the only evidence submitted with the Notice of Removal was insufficient to establish AIC, on August 21, 2026, the Court issued an Order requiring Defendants to file a supplemental memorandum and any additional evidence to support AIC, or to withdraw the Notice of Removal.[43]

"Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," pursuant to 28 U.S.C. § 1653. The Fifth Circuit has held that § 1653 should be "liberally construed to allow a party to cure technical defects …."[44] Here, Defendants timely responded to the August 21 Order with a supplemental brief and additional evidence of AIC. The additional evidence provided by Defendants is sufficient to establish AIC in this case. Specifically, Defendants provided, *inter alia*: 1) Marcy's past medical expenses at the time of removal totaled $30,518.75;[45] 2) a May 2026 settlement demand from Plaintiffs' counsel, which states that Marcy had incurred a total of $94,158.48 in past medical expenses by that time;[46] 2a) as of January 2026 Marcy was continuing to receive biweekly infusions with pain scored 0/10, but was still suffering

---

[42] *Leger*, 2021 WL 3662071, at *3.

[43] R. Doc. 10.

[44] *See Menendez v. Wal-Mart Stores, Inc.*, 364 Fed.Appx. 62, 66 (5th Cir. 2010) (finding that the district court did not abuse its discretion in permitting amendment of the notice of removal); *see also Blakeley v. United Cable Sys.*, 105 F.Supp.2d 574, 578–79 (S.D. Miss. 2000) (string cite).

[45] R. Doc. 11, p. 2; R. Doc. 11-3.

[46] R. Doc. 12-4, p. 6. Although some of the treatment date ranges in the settlement demand extend past the September 10, 2025 date this case was removed, the medical expenses in the settlement demand that clearly pre-date removal total $28,338.75. *See also* R. Doc. 11-3 (indicating that Marcy's medical expenses at the time of removal were $30,518.75). To the extent the settlement demand sets forth facts developed at the time of removal, which include Plaintiff's medical treatment and lost wages up to the date of removal, and potential future medical damages, the Court may consider it. *See Pylant*, 2017 WL 3446536, at *5 ("When determining its jurisdiction, the Court may rely on submissions filed after removal, *so long as the post-removal filing sets forth facts developed at the time of removal.*") (internal quotations and citations omitted) (emphasis added).

cognitive challenges and continuing to undergo physical therapy;[47] 2b) Marcy has lost income of $15,000 per year beginning the date of the accident in July 2024;[48] 2c) expected future medical expenses of $250,000;[49] 3) medical records documenting head trauma from the accident and neurology reports indicating headaches and cognitive complaints, as well as other medical issues including a facial laceration that required stitches and dental trauma.[50] Considering the responses to the requests for admission with the evidence of medical expenses and lost wages incurred pre-removal, Defendants have proven that the requisite AIC is met by a preponderance of the evidence.

### C. Albertsons Has Met Its Burden of Establishing That Ojeda-Dartagna Was Improperly Joined

"When a case is removed to federal court on the basis of diversity jurisdiction, the *Erie* doctrine requires federal courts to apply substantive state law when adjudicating state law claims."[51] "Under Louisiana law, a court may hold a corporate officer or employee individually liable for injuries to third persons under certain circumstances."[52] "This 'liability may be imposed on such individuals even if the duty breached arises solely from the employment relationship.'"[53]

[47] R. Doc. 12-4, p. 6.

[48] *Id.*, pp. 6-7.

[49] *Id.*, p. 9.

[50] R. Doc. 11, p. 3, 6; R. Doc. 12-3. Plaintiffs have not shown to a legal certainty that Marcy will not be able to recover the requisite jurisdictional amount. *Grant v. Chevron Phillips Chem. Co*., 309 F.3d 864, 869 (5th Cir. 2002), citing *De Aguilar v. Boeing Co*., 47 F.3d 1404, 1412 (5th Cir. 1995) (quoting *St. Paul Mercury Indem*. [*v. Red Cab Co*.], 303 U.S. [283] at 289 (1938) ("[I]f a defendant in a Louisiana suit can produce evidence sufficient to constitute a preponderance showing that, regardless of the style or wording of the demand, the amount in controversy actually exceeds § 1332's jurisdictional threshold, that Louisiana case will then resemble any other amount-in-controversy case, bringing into play the foundational rule of removal jurisdiction: The plaintiff can defeat diversity jurisdiction only by showing to a 'legal certainty' that the amount in controversy does not exceed $75,000.")).

[51] *RPM Pizza, LLC v. Argonaut Great Cent. Ins. Co.*, Nos. 10-684, 12-147, 2013 WL 1296678, at *2 (M.D. La. Mar. 28, 2013) (amended on denial of reconsideration on other grounds) (Jackson, J.), citing *LeMeilleur v. Monumental Life Ins. Co.*, 419 Fed.Appx. 451, 453 (5th Cir. 2011) and *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[52] *Kemp v. CTL Distribution, Inc.*, 440 Fed.Appx. 240, 245 (5th Cir. 2011) (unpubl.), citing *Canter v. Koehring*, 283 So.2d 716 (La. 1973), superseded on other grounds by statute, La. R.S. § 23:1032 (1998)).

[53] *Kemp*, 440 Fed.Appx. 245, citing *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 312 (5th Cir. 2005) (citing *Ford v. Elsbury*, 32 F.3d 931, 936 (5th Cir. 1994)).

When considering the sufficiency of allegations purporting to state a claim for an individual employee's personal liability, "[t]he Court is only concerned…[with] whether a viable claim may be made against [the defendant employee] personally and not whether [the employer] may be held vicariously liable for the action of its employees."[54] As explained by the Fifth Circuit, "[v]icarious liability is not a revolving door. In certain situations, an employer may be held liable for the negligent acts of its employees…but *Canter* does not attach liability to a managerial employee absent breach of a duty personally owed by the employee to third parties."[55]

"Under Louisiana law, an employee is personally liable if (1) the employer owes a duty of care to a third person; (2) the employer delegated that duty to a defendant-employee; (3) and the defendant-employee breached the duty through his own fault and lack of ordinary care."[56] "However, a defendant-employee's 'general administrative responsibility' is insufficient to impose personal liability," the fourth *Canter* factor.[57] For the employee to be found liable for purported personal fault or negligence arising from a breach of duty, "that person must have some personal contact with and responsibility towards the injured employee."[58]

---

[54] *Hornsby v. AlliedSignal, Inc.*, 961 F.Supp. 923, 930 (M.D. La. 1997). *See also Haynes v. Healthcare Services Group, Inc.*, No. 13-649, 2014 WL 2769080, at *2 (M.D. La. May 30, 2014) ("To begin, vicarious and personal liability are not antithetical. 'If the elements for imposing liability on the corporate employee are met, it does not matter that the corporation might also be [vicariously] liable.'") (citing *Ford*, 32 F.3d at 936)).

[55] *Anderson v. Georgia Gulf Lake Charles, LLC*, 342 Fed.Appx. 911, 918-19 (5th Cir. 2009) (finding no breach where there was no evidence the employees had personal knowledge of the defect).

[56] *Moore v. Manns*, 732 F.3d 454, 456-57 (5th Cir. 2013), citing *Canter*, 283 So.2d at 721.

[57] *Moore*, 732 F.3d at 457 (affirming district court's denial of motion to amend to add nondiverse employees and agreeing that plaintiff's "proffered amendment relied on the proposed parties' general responsibilities to oversee safety rather than on evidence of personal fault, as required to trigger individual liability under Louisiana law") and *see Canter*, 283 So.2d at 721 (discussion of general administrative responsibility as the fourth factor).

[58] *Esco v. Smith*, 468 So.2d 1169, 1175 (La. 1985). *See also Canter*, 283 So.2d at 721 ("personal liability cannot be imposed upon the…employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages.").

Plaintiffs do not specifically address the *Canter* factors in the Motion. Instead, Plaintiffs rely on testimony from Albertson's corporate representative, Michael Habbestad, regarding the duties of store personnel and the management team to oversee the parking lot.[59] However, consideration of this testimony would require the Court to pierce the pleadings. "The decision to pierce the pleadings 'lie[s] within the discretion of the trial court.'"[60] Rather than pierce the pleadings, "[i]n most cases, to determine whether the plaintiff has any possibility of recovery against the non-diverse defendant, the court should 'conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the defendant has demonstrated that there is no possibility of recover by the plaintiff against an in-state defendant.'"[61]

Here, Plaintiffs' Petition contains only a few specific allegations about Ojeda-Dartagna. Plaintiffs allege that Ojeda-Dartagna was the on-duty manager when the alleged incident occurred, and that "Ojeda-Dartagna, also had a duty and was in a position to find hazards on the premises, and was in charge of inspecting and maintaining the parking lot and walking surfaces in question, and keeping said parking lot and walking surfaces free from hazards and unreasonable risks of harm such as that encountered by Marcy Ellis on July 10, 2024, thus rendering this defendant liable to petitioner for all damages complained of herein. This defendant knew, or in the existence of reasonable care, should have known of the existence of this defective condition."[62] Plaintiffs also allege that, as Ojeda-Dartagna was acting in the course and scope of his employment with

---

[59] R. Doc. 8-1, p. 3.

[60] *Flagg*, 819 F.3d at 137, citing *Smallwood*, 385 F.3d at 573.

[61] *Id*., at 136, citing *Smallwood*, 385 F.3d at 573.

[62] R. Doc. 1-4, p. 5, ¶ 5.

Albertsons on the day of the incident, Albertsons is liable for all damages and losses suffered by Plaintiffs as a result of Ojeda-Dartagna's actions through the theory of *respondeat superior*.[63]

The limited allegations against Ojeda-Dartagna in the Petition are based on his role as an on-duty manager of the Albertsons store where the underlying incident occurred. These are not adequate factual allegations against Ojeda-Dartagna to establish the elements necessary to overcome the restrictions on employee personal liability set out in *Canter.* While "[a] supervisor's knowledge of the dangers present 'could give rise to the personal duty contemplated in *Canter,*'" the allegations in the Petition do not allege that Ojeda-Dartagna had such knowledge. Courts have consistently found that where a plaintiff fails to allege that a non-diverse defendant had personal knowledge of, or actively contributed to, the dangerous condition, the plaintiff has failed to state a claim against that defendant. [64]

---

[63] R. Doc. 1-4, p. 5, ¶ 6.

[64] *See Ford*, 32 F.3d at 936 (employee's knowledge of a risk of harm and failure to respond to the risk could create personal liability under *Canter*). *See also Creppel v. Apache Corp.*, No. 04-865, 2004 WL 1920932, at *3 & n. 1 (E.D. La. Aug. 25, 2004) (alleging supervisor's personal knowledge of the dangerous condition and failure to cure it); *Mathes v. PNK (Baton Rouge) Partnership*, No. 17-392, 2017 WL 5762434, at *5 (M.D. La. Nov. 6, 2017), report and recommendation adopted, No. 17-392, 2017 WL 5760882 (M.D. La. Nov. 28, 2017) ("This Court has previously held that, 'Under Louisiana law, an employee's personal involvement in causing the alleged injury *or the employee's knowledge of the dangers present* could give rise to the personal duty contemplated by *Canter*.'") (quoting *Haynes*, 2014 WL 2769080, at *3 (citing *Canter*, 283 So.2d at 721)) (emphasis added); *Hayden v. Phillips Petroleum Co.*, 788 F.Supp. 285, 287 (E.D. La. 1992) (finding an employee's alleged personal knowledge of a dangerous pipeline could give rise to personal duty under *Canter*); *Ayio v. Boykins*, No. 23-1442, 2024 WL 4201071, at *2 (M.D. La. Sept. 16, 2024) (Jackson, J.) ("Although Plaintiff does not allege that Boykins actually knew of or personally caused the spill that Plaintiff allegedly slipped on, Plaintiff argues that because Boykins was the only employee on duty at the time, and because Dollar General requires its employees to keep its stores clean, it stands to reason that Boykins had a personal duty towards Plaintiff, which Boykins breached by failing to clean the spill. (See Doc. 15 at 4). 'However, none of the allegations of negligent acts committed by [Boykins] contain any facts which distinguish [Boykins'] alleged duty to the [P]laintiff from the general administrative responsibilities of [her] employment.' *Gautreau v. Lowe's Home Ctr., Inc.*, No. 12-630, 2012 WL 7165280, at *4 (M.D. La. Dec. 19, 2012), report and recommendation adopted, No. 12-630, 2013 WL 636823 (M.D. La. Feb. 20, 2013) (finding improper joinder of defendant employee). Here,'[t]he duty alleged by the [P]laintiff is a duty owed generally to all patrons of the store—not a duty owed personally to the [P]laintiff arising from some relationship unique to her.' *Id.* As the Magistrate Judge points out, and as Plaintiff fails to meaningfully contest, '[c]ourts have consistently found that where a plaintiff fails to allege that a non-diverse defendant had personal knowledge of, or actively contributed to, the dangerous condition, the plaintiff has failed to state a claim against that defendant.' (Doc. 14 at 12 (citing cases))."); *Giles v. Wal-Mart Louisiana, LLC*, No. 16-2413, 2016 WL 2825778, at * 4 (E.D. La. May 13, 2016) ("Plaintiff does not allege that [the non-diverse defendant] personally knew or actively contributed to any alleged unsafe conditions. Plaintiff's allegation that all Defendants 'had actual or constructive knowledge' of the allegedly dangerous condition on the premises is a

Under similar facts, the Fifth Circuit has affirmed denial of remand due to improper joinder of nondiverse store employees. In *Miciotto v. Hobby Lobby Stores, Inc*.,[65] the plaintiff was injured when she tripped over a warped or broken wooden expansion joint and fell while exiting the store. She sued Hobby Lobby and two nondiverse employees, whom the plaintiff alleged had "direct responsibility over the premises of Hobby Lobby Stores, Inc. for the inspection, discovery, repair, and/or warning against the hazardous condition complained of in this suit." The plaintiff further alleged that the two store employees, "in the course and scope of their employment, failed to warn against a known hazard or, alternatively, failed to discover and remedy the hazard as required in the exercise of reasonable care."[66] In affirming denial of the plaintiff's Motion to Remand for lack of diversity, the Fifth Circuit found that the plaintiff "failed to allege any specific factual allegations to substantiate her conclusory allegations, which merely track the general scope of the duty owed under Louisiana law."[67]

Similarly, there are no specific factual allegations that Ojeda-Dartagna actually knew of or personally contributed to the parking lot defect (deterioration) that allegedly injured Marcy, and the lack of such factual allegations fails to state a claim against the nondiverse employee.[68] Because Plaintiffs have not alleged sufficient facts to show that Ojeda-Dartagna had personal knowledge

---

conclusory allegation that the Court is not required to accept and it does not amount to an allegation that [the non-diverse defendant] personally knew of the allegedly dangerous hole in the parking lot.").

[65] No. 21-30456, 2022 WL 3210686 (5th Cir. Aug. 9, 2022).

[66] 2022 WL 3210686, at *1.

[67] *Id.*, at *3, n. 3 (citing this Court in *Deggs v. Fives Bronx, Inc*., No. 19-406, 2020 WL 12948065, at *8 (M.D. La. Mar. 3, 2020) ("The allegation that Housley 'failed to adequately inspect and repair the subject equipment such that it was in an adequate safe working manner prior to the accident,' is the sort of conclusory allegation that this [c]ourt is not required to accept."), report and recommendation adopted sub nom. *Deggs v. Five Bronx, Inc*., No. 19-406, 2020 WL 1442970 (M.D. La. Mar. 24, 2020) (Jackson, J.)).

[68] *Mier v. Sompo Am. Ins. Co.,* No. 22-73, 2023 WL 2950631, at *5, 7 (M.D. La. Feb. 13, 2023), report and recommendation adopted, No. 22-73, 2023 WL 2950621 (M.D. La. Mar. 9, 2023) (finding general manager improperly joined notwithstanding the plaintiff's allegations that the manager "knew or should have known of the defective and hazardous conditions which reasonably might and did cause damages to [the plaintiff]" because there was no allegation that the manager knew of or actively contributed to the alleged defect).

of the alleged defect in the parking lot or contributed to the cause of the allegedly defective condition, Plaintiffs have not stated a claim for personal liability against Ojeda-Dartagna.[69]

While the parties have submitted evidence on the improper joinder issue, a summary inquiry is not proper. When a plaintiff's allegations *can survive a Rule 12(b)(6) challenge*, the district court may, in some circumstances, "'pierce the pleadings and conduct a summary inquiry' before slamming the door on a claim of improper joinder."[70] Here, because Plaintiffs' allegations against Ojeda-Dartagna do not survive a Fed R. Civ P. 12(b)(6)-type analysis, it is not appropriate to pierce the pleadings to consider "summary judgment-type" evidence.[71] However, even

---

[69] Plaintiffs cite *Freeman v. Wal-Mart Stores, Inc*., where the Plaintiff alleged that Wal-Mart employees left a broken plastic tie-down on the floor in a Wal-Mart store. The federal district court for the Western District of Louisiana remanded the case, stating that whether the manager could be held liable for plaintiff's injury was for the state court to decide and that the duty owed by the employee defendant to the plaintiff was personal. *Freeman v. Wal-Mart Stores, Inc.*, 775 F.Supp. 208 (W.D. La. 1991). *Freeman* is not controlling on this Court and is distinguishable from this case as there is no factual allegation in the Petition that any Albertsons' employee, including Ojeda-Dartagna, knew of the parking lot defect before this accident or that any employee of Albertsons caused the parking lot defect. Plaintiff also cites *Murphy v. R.J. Reynolds Tobacco*, which does not discuss *Canter*, making other cases discussing improper joinder more applicable. *Murphy v. R.J. Reynolds Tobacco*, 171 F.Supp.2d 636 (E.D. La. 2001). Finally, Plaintiff cites to *Marbury v. Cracker Barrel Old Country Store, Inc. et al.*, where another division of this Court held that the plaintiff stated a claim against an employee defendant under *Canter* such that the employee was not improperly joined when the plaintiff alleged that the individual employee was made aware of a dangerous condition and did not remedy the condition. *Marbury v. Cracker Barrel Old Country Store, Inc.*, No. 18-905, 2019 WL 4667340, at **5-6 (M.D. La. Sept. 6, 2019), report and recommendation adopted, No. 18-905, 2019 WL 4655906 (M.D. La. Sept. 24, 2019). The cases upon which Plaintiffs rely are distinguishable as they are either not controlling, not applicable, or are factually distinguishable. R. Doc. 8-1, pp. 4-6.

[70] *Pitman v. Crane Co.*, No. 13-83, 2013 WL 1403326, at *3 (E.D. La. April 5, 2013) (emphasis added) and, *e.g., Smallwood*, 385 F.3d at 573.

[71] *See Lundy v. ACE Am. Ins. Co.,* 674 F.Supp.3d 326, 337 (M.D. La. 2023), (as amended Aug. 11, 2023) (declining to conduct a summary inquiry and noting that the proffered customer incident report did not show delegation of duties to the nondiverse manager or that he was aware of the hazard before the slip and fall).; *See also Breaux v. Occidental Chem. Corp.*, No. 25-1055, 2025 WL 2390809, at *5, n.40 ("Recall that because the Court finds that plaintiffs' amended complaint cannot survive a Rule 12(b)(6) challenge, it will not consider the deposition attached to plaintiffs' motion to remand in its improper joinder analysis. *See Lundy*, 674 F. Supp. 3d at 336; *see also* R. Doc. No. 10-3 (deposition of OxyChem corporate representative). The Court will pierce the pleadings only in the limited case 'in which a plaintiff *has* stated a claim,' but has excluded 'discrete and undisputed facts that would *preclude* [their] recovery against the in-state defendant.' *Smallwood*, 385 F.3d at 573–74 (emphasis added). Even if the Court had determined that plaintiffs could state a claim against [the non-diverse employee], the deposition testimony is also not the type of 'discrete and undisputed' fact that the Court would be permitted to consider when piercing the pleadings. *See Lundy*, 674 F.Supp.3d at 337 ('T]he information outside of the pleadings that Plaintiff desires the Court to consider...contains highly subjective statements. It does not supply any discrete facts indicating that [the defendant employee] was specifically delegated any duties ....')"); *Flagg*, 819 F.3d at 136-37 ("Such a summary inquiry 'is appropriate only to identify the presence of discrete and undisputed facts *that would preclude [the plaintiff's recovery*

considering the evidence, Plaintiffs' fail to state a claim against Ojeda-Dartagna. as there is no testimony or evidence that shows that Ojeda-Dartagna was aware of, or actively contributed to, the defect in the parking lot prior to Marcy's accident.[72]

## III. RECOMMENDATION

Julio Ojeda-Dartagna has been improperly joined as a defendant in this case. Plaintiffs' generalized, conclusory allegations in the Petition that Ojeda-Dartagna, the Albertson's manager on duty the day of Plaintiff Marcy Ellis's alleged slip-and-fall, knew or should have known of the hazardous condition in the parking lot and failed to remedy it are insufficient to state a cause of action for personal employee liability under controlling state law. As the parties are completely diverse when Ojeda-Dartagna's citizenship is properly disregarded and as the other requirements for diversity subject matter jurisdiction are met,

**IT IS RECOMMENDED** that the Motion to Remand,[73] filed by Plaintiffs Marcy and Greg Ellis, be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Plaintiffs' claims against defendant, Julio Ojeda-Dartagna, be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

**IT IS FURTHER RECOMMENDED** that this matter be referred to the undersigned for a scheduling conference.

Signed in Baton Rouge, Louisiana, September 8, 2026.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

*against the in-state defendant.*'") (emphasis added), citing *Smallwood*, 385 F.3d at 573-74 (citing *Travis*, 326 F.3d at 648-49).

[72] *See* R. Doc. 9-1, p. 15 (stating that Albertsons was not aware of any incidents in the last five years involving alleged broken or cracked concrete or asphalt or of customers tripping over an expansion joint).

[73] R. Doc. 8.